# In the
# United States Court of Appeals
## for the Federal Circuit

APPLIED PREDICTIVE TECHNOLOGIES, INC.,

*Plaintiff-Appellant,*

v.

MARKETDIAL, INC., JOHN M. STODDARD,
aka Johnny Stoddard, MORGAN DAVIS,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
District of Utah in No. 2:19-cv-00496-JNP
Honorable Jill N. Parrish, Judge Presiding

## NON-CONFIDENTIAL REPLY BRIEF OF APPELLANT

**FOLEY & LARDNER LLP**
DAVID B. GOROFF
321 North Clark Street, Suite 3000
Chicago, Illinois 60654
(312) 832-4500
dgoroff@foley.com

PAVAN K. AGARWAL
Washington Harbour
3000 K Street N.W., Suite 600
Washington, DC 20007-5101
(202) 672-5300
pagarwal@foley.com

**DENTONS US LLP**
KIRK R. RUTHENBERG
NICHOLAS H. JACKSON
1900 K Street, NW
Washington, DC 20006
(202) 496-7500
kirk.ruthenberg@dentons.com
nicholas.jackson@dentons.com

SPENCER HAMILTON
100 Crescent Court
Suite 900
Dallas, TX 75201
(214) 259-0900
spencer.hamilton@dentons.com

*Attorneys for Plaintiff-Appellant, Applied Predictive Technologies, Inc.*



# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

INTRODUCTION ............................................................................................1

Defendants Ignore APT's Facts Demonstrating Its Three Compilations
Are Trade Secrets .....................................................................................3

A.    PCB ..................................................................................................4

B.    Customized Feeds .............................................................................5

C.    SDG ..................................................................................................6

Defendants Ignore Facts Demonstrating Misuse .............................................8

APT Irrefutably Established Its Trade Secrets ...............................................9

A.    PCB ..................................................................................................9

B.    Customized Feeds ...........................................................................11

C.    SDG ................................................................................................13

Defendants' Challenges To APT's Trade Secrets Fail .................................14

Defendants Cannot Refute The Court Misallocated The Burden ..................19

The Court Denied APT Inferences ...............................................................22

The Court Erroneously Ruled As To The Complete PCB .............................23

The Court Disregarded Controlling Law Regarding Compilation Trade
Secrets ....................................................................................................25

The Court Erred In Finding Particularity Is Immaterial ...............................28

Defendants' Misuse Helps Demonstrate That APT's Compilations Are
Secrets ....................................................................................................29

The Court Erred In Dismissing APT's Third-Party Beneficiary Claim .........30

CONCLUSION .............................................................................................31

# CONFIDENTIAL MATERIAL OMITTED (REPLY BRIEF)

The material omitted on page 1 are names of APT's clients that MarketDial induced into sending APT's Secrets—Appellees also claim these as clients and seek to keep them confidential; the material omitted in the second full paragraph on page 4 describes specific aspects of what APT aims to measure through its analytic tools, as set forth in the Partners Capabilities Briefing; the material omitted in last paragraph on page 4 indicates the specific aspects of APT's analytics software as used by MarketDial for business development; the material omitted in the first sentence on page 5 indicates a specific aspect of APT's analytics software as used by MarketDial for business development; the material omitted in the first full paragraph on page 5 describes specific processes used for APT's Customized Feeds; the first word omitted in the second to last line on page 5 is a name of an APT client that MarketDial induced into sending APT's Secrets; the remaining words omitted on page 5 describes the specific categories that APT analyzed in order to recommend a specific business strategy to a customer; the material omitted on page 6 are names of APT clients that MarketDial induced into sending APT's Secrets; the material omitted on page 7 describes a desired goal for the architecture that is provided in the SDG; the material omitted on page 10 indicates the specific aspects of APT's analytics software as used by MarketDial for business development; the material omitted on page 11 describes an APT technique that is fundamental to APT's Secrets; the material omitted on page 12 are names of APT clients that MarketDial induced into sending APT's Secrets; the material omitted on page 13 details the technical architecture utilized by APT; the material omitted on page 15 are names of APT clients that MarketDial induced into sending APT's Secrets; the material omitted on page 26 are names of APT clients that MarketDial induced into sending APT's Secrets.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Adler v. Wal-Mart Stores*,
144 F.3d 664 (10th Cir. 1998) ...............................................16

*Ajuba Int'l, LLC v. Saharia*,
2014 WL 3520525 (E.D. Mich. July 14, 2014)...................22

*Alifax Holdings SPA v. Sire Analytical Sys. SLR*,
2024 WL 2932910 (Fed. Cir. June 11, 2024)......................28

*A.M. v. Holmes*,
830 F.3d 1123 (10th Cir. 2016), ............................................24

*Anderson v. Liberty Lobby, Inc*.,
477 U.S. 242 (1986)................................................ 20, 25

*Bimbo Bakeries USA, Inc. v. Sycamore*,
39 F.4th 1250 (10th Cir. 2022) ............................ 2, 19, 21

*Bridgeway Corp. v. Citibank*,
201 F.3d 134 (2d Cir. 2000)..................................................24

*Brodkin v. Tuhaye Golf, LLC*,
355 P.3d 224 (Utah Ct. App. 2015) ....................................31

*Calendar Res. LLC v. StubHub, Inc*.,
2020 WL 4390391 (C.D. Cal. May 13, 2020)....................26

*Cap Exp., LLC v. Zinus, Inc*.,
722 F. App'x 1004 (Fed. Cir. 2018)......................................1

*CDC Restoration & Construction v. Tradesmen Contractors*,
274 P.3d 317 (Utah 2012)......................................................29

*Coda Dev. v. Goodyear Tire & Rubber Co.*,
667 F. Supp.3d 580 (N.D. Ohio 2023)........................ 17, 18

*D Three Enters., LLC, v. SunModo Corp*.,
890 F.3d 1042 (Fed. Cir. 2018) ...........................................24

iii

*Dodson Int'l Parts, Inc. v. Altendorf*,
347 F. Supp. 2d 997 (D. Kan. 2004) .............................................................. 20, 21

*Double Eagle Alloys, Inc. v. Hooper*,
2024 WL 3166921 (N.D. Okla. June 25, 2024).................................................27

*Edwards v. Honeywell*,
960 F.2d 673 (7th Cir.1992) ...............................................................................23

*Finnigan Corp. v. Int'l Trade Comm'n*,
180 F.3d 1354, 1363 (Fed. Cir. 1999) .................................................................15

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) ..........................................................................15

*IDX Sys. Corp. v. Epic Sys. Corp.*,
285 F.3d 581 (7th Cir. 2002) ......................................................................... 17, 27

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998) .............................................................................19

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) ..............................................................................18

*June v. Union Carbide Corp.*,
577 F.3d 1234 (10th Cir. 2009) ..........................................................................16

*Kanaday v. City of Kiowa*,
590 F.3d 1161 (10th Cir. 2010) ..........................................................................24

*Lilley v. JP Morgan Chase*,
317 P.3d 440 (Utah Ct. App. 2013) ....................................................................31

*M.H. Walker Realty Co. v. American Surety Co. of New York*,
211 P. 998 (Utah 1922) .......................................................................................30

*NEXT Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*,
2020 WL 2836778 (N.D. Ill. May 31, 2020).......................................................14

*Olaplex, Inc. v. L'Oreal USA, Inc.*,
855 F. App'x 701 (Fed. Cir. 2021) ......................................................................28

*OsteoStrong Franchising v. Richter*,
2020 WL 4584007 (D.N.M. Aug. 10, 2020) .......................................................20

*Prysmian Cables & Sys., USA, LLC v. Szymanski*,
573 F. Supp. 3d 1021 (D.S.C. Nov. 29, 2021)......................................................26

*Quest Solution, Inc. v. RedLPR, LLC*,
2023 WL 11910450 (D. Utah Aug. 3, 2023) ........................................................21

*REXA, Inc. v. Chester*,
42 F.4th 652 (7th Cir. 2022) ...............................................................................19

*Rivendell Forest Prod., Ltd. v. Georgia-Pac. Corp.*,
28 F.3d 1042 (10th Cir. 1994) ................................................................... *passim*

*Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*,
773 P.2d 1382 (Utah 1989) .................................................................................30

*Sit-Up Ltd v. IAC/InterActiveCorp.*,
2008 WL 463884 (S.D.N.Y. Feb. 20, 2008).........................................................13

*SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs, Inc.*,
28 P.3d 669 (Utah 2001) .....................................................................................30

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
70 F.4th 759 (4th Cir. 2023) ................................................................................11

*TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*,
966 F.3d 46 (1st Cir. 2020) ..................................................................................28

*Trandes Corp. v. Guy F. Atkinson Co.*,
996 F.2d 655 (4th Cir. 1993) ...............................................................................28

*USA Power, LLC v. PacifiCorp.*,
235 P.3d 749 (Utah 2010)...................................................................... 10, 19, 20

*USA Power, LLC v. Pacificorp.*,
372 P.3d 629 (Utah 2015)............................................................. 19, 20, 21, 29

*Utah Medical Products v. Clinical Innovations*,
2000 WL 1838586 (Fed. Cir. 2000) ....................................................................16

*Wagner v. Clifton,*
62 P.3d 440 (Utah 2002)......................................................................................31

*Waterville Inv., Inc. v. Homestead Sec. Ntwk., Inc.*,
2010 WL 2695287 (E.D.N.Y. July 10, 2010)........................................................27

**INTRODUCTION**

In their Brief,[1] Defendants ignore facts and law demonstrating that reversal is necessary. Defendants waive challenges to what they ignore[2] and their arguments otherwise fail.

Defendants ignore the facts detailed at OB7-18, which demonstrate that APT's PCB, Customized Feeds and SDG are each compilation trade secrets.

Defendants ignore facts demonstrating their misappropriation, including admissions that Stoddard induced APT to send him confidential materials, Davis urged this, Davis learned from APT's materials what he was "hop[ing]" for[3], and both knew they faced "disaster" if caught. (OB3) (citing Appx7172).

Defendants ignore APT's computer forensics expert's findings that Stoddard downloaded the PCB and SDG from McKinsey and then extensively accessed them at MarketDial to develop its software and business. (OB23-25, 55 n.21).

Defendants ignore evidence that they induced ███████ Client ███████ and others to share APT's Customized Feeds, which Defendants used to create

---

[1]Defendants' Brief is "DB." APT's Opening Brief is "OB." This Reply uses terms defined in the OB.
[2]*See Cap Exp., LLC v. Zinus, Inc.*, 722 F. App'x 1004, 1009 (Fed. Cir. 2018).
[3]Defendants note that Davis described T&L as "crap software." (DB56, n.19). In that same chain, Davis requested APT's UI and other intel regarding APT. (Appx4513-18).

MarketDial's rival product and steal APT customers. (OB16) (citing Appx5297-98; Appx5305; Appx5412).

Defendants ignore *USA Power I*'s six-part test and the facts showing APT established compilation trade secrets under that test. (OB5-6, 19-20, 24-27).

Instead, Defendants mischaracterize APT's summary judgment submission, stating that APT spent one page on its trade secrets in its *argument section*, (DB10, 33, 38), while ignoring APT's extensive explanation of its trade secrets in the RSOF, relying on more than 200 exhibits. Defendants likewise dwell on one exhibit, APT's interrogatory answers, which they grossly mischaracterize. Defendants similarly dwell on trade secrets that are not part of APT's appeal.[4]

Regarding applicable law, Defendants cannot overcome that:

- APT established that the PCB, Customized Feeds and SDG were trade secrets. Contrary to the Court's and Defendants' position, the Court did not need to "hunt" for anything. The Court had the PCB and SDG and all evidence showing misuse of the Customized Feeds in hand.

- The Court flipped the applicable burden, requiring non-movant APT to show its compilations were non-public and valuable when it was Defendants' burden to show otherwise. Defendants ignore (and therefore concede) *Bimbo Bakeries v. Sycamore*, 2017 WL 3089011 (D. Utah July 20, 2017), which so holds. Defendants ignore the multiple instances APT identified where the Court held APT to the distinct burden of a trade secret plaintiff at trial and denied APT the benefit of inferences. (OB56-58).

---

[4]APT pursued other trade secrets in good faith but could not address them in this appeal due to space constraints.

- By challenging only the 28-slide PCB, Defendants waived any challenge to the 67-slide PCB, meaning the Court erred in granting summary judgment regarding the latter.

- The Court erroneously focused on the individual components of APT's compilations instead of judging them in aggregate, as required by *Rivendell Forest Products, Ltd. v. Georgia-Pacific Corp.*, 28 F.3d 1042 (10th Cir. 1994), which Defendants ignore.

- The UUTSA lacks a particularity requirement, resulting in a lower threshold to establish the existence of a trade secret compared with the DTSA, yet the Court found both statutes compel the same result and ignored that APT met both statutes' requirements.

- The Court erred by ignoring Defendants' acts of misuse, when these acts contribute to the evidence demonstrating that APT's compilations were valuable trade secrets.

- The Court erroneously found that APT was not a third-party beneficiary of Stoddard's Confidentiality Agreement with McKinsey, yet that agreement existed to protect the class of McKinsey clients, including APT, who shared confidential information, at least creating a fact issue.

## Defendants Ignore APT's Facts Demonstrating Its Three Compilations Are Trade Secrets

Echoing the Court, Defendants falsely assert—nine times—that APT required the Court to "hunt through" the record searching for a trade secret.[5] Rather, APT consistently identified the PCB, Customized Feeds and SDG as trade secrets. The Court expressed the need to "hunt" because it misunderstood its duty to consider each compilation in aggregate.

---

[5]*See* DB11, 12, 13, 16, 31-33, 41, 45.

Defendants ignore the facts that APT emphasized in its OB establishing each Secret.

## A. **PCB**

The PCB was Ex.144 in the summary judgment briefing. (Appx6431-98). In its OB, APT described 31 slides that contained valuable and confidential information which would assist a competitor. (OB13-14). APT described how the PCB's 67 slides collectively show the "essence of the distinction" between the traditional testing approach and APT's. (Appx1676; Appx2531).

APT's Expert Kursh explained that the PCB shows the "sequence of steps for marketing" and provides "steps necessary for a vendor to compete in various sectors, including the financial sector, and describes APT's methodology and approach to its software." (OB10) (citing Appx5223). APT's Expert Thomke described it as a "blueprint for starting a company that supplies analytic tools to measure cause-and-effect relationships between ▮▮▮Actions▮▮▮ and ▮▮▮Results▮▮▮." (OB11) (citing Appx5504).

Defendants erroneously assert that APT did not explain how its use of ▮Process▮ ▮Process▮ was unique. (DB12-13). Kursh identified five slides demonstrating this, and PCB slides 46-51 (Appx5508-09; Appx6477-82) describe APT's ▮Process▮ process and how it measures "▮▮▮Result▮▮▮." (OB14, 47 & n.16). Thomke testified that these slides demonstrate "how ▮▮Process▮▮ were repeatedly applied

4

to find a distribution of **Result**, which can be used to adjust variables and select control sites to achieve the most accurate outcomes," enabling third parties to "dismiss other methodological attempts." (OB37) (citing Appx7434-45, RSOF ¶43); *see also* Appx5561 (value to MarketDial).

## B.    Customized Feeds

Defendants' defense to their theft of APT's Customized Feeds is to profess ignorance about how they "were differentiated from the client's raw data." (DB27, 43).[6] The answer is straightforward—Customized Feeds are the product of APT's **Action**, **Action**, and **Action** customer raw data. (OB15) (citing Appx5285-86). The differences between the two reflect APT's trade secret. This belies Defendants' assertion that this evidence does not show secret information, (DB43-44), or where "'data feed' secrets begin [or] end…." (DB28).

Kursh explained the Customized Feeds' value, noting they provide a "richer source of data," which "enables valuable analytics not previously possible" using raw data. (OB15 (citing Appx5278, 5285-86); *see also* Appx5581-83 (Kursh Supplemental Report)). So did Thomke. (Appx5075-83). For example, APT's Customized Feeds for **Client** tested more **Information**, **Classification** attributes and **Specific Data** **Specific Data** than raw data would permit. (OB16) (citing Appx5287-97).

---

[6]Defendants mistakenly claim that a Customized Feed is a way for a retailer to share its information. (DB26, n.11). That is the "raw" data feed.

MarketDial's misappropriation of APT's Customized Feeds indisputably enabled MarketDial to develop a rival product faster, for less money and with less error. (OB15-16) (citing Appx1283, Appx5298-303, Appx7374).

Defendants disregard APT's evidence that APT's specific data structure was confidential (OB15) (citing Appx5285-86), erroneously claiming that "APT gave no explanation as to how any of the information…was not readily ascertainable." (DB27). Defendants identify no Customized Feed that was publicly available.

Defendants sidestep that they misused APT's Customized Feeds—not raw data—to launch their rival product. MarketDial offered its services for free to induce ▮Client▮ to send it APT's Customized Feeds for this purpose. (OB16) (citing Appx2168; Appx2436; Appx5297-98; Appx5301-02; Appx5082-83). MarketDial similarly induced ▮Client▮ and ▮Client▮ to provide APT's Customized Feeds. (OB16-17) (citing Appx5305; Appx5412; Appx7354).

## C.   **SDG**

Defendants cannot rebut that the SDG shows how APT set up T&L's software to work and provides a technical overview. (OB17) (citing Appx5509-10). They ignore that the SDG constituted a "playbook" showing APT's specific choices for satisfying customers regarding six areas:

a)   Technical architecture

b)   Data center

c)   Data transfer

d)      Backup and recovery

e)      Monitoring, and

f)      Installation.

(OB17) (citing Appx3724-31; Appx2833). This provides a competitor "valuable information about the Amount architecture, data practices, and security that it would need to satisfy customers" and design a competing system. (OB18). The SDG provided timelines for implementing these categories, enabling MarketDial to develop competing timelines. (OB18) (citing Appx5584-85). By identifying APT's choices, the SDG enabled MarketDial to evaluate tradeoffs and avoid mistakes. (Appx3397).

Defendants claim there is no trade secret information "in" the SDG (DB28), ignoring that it identified APT's choices regarding servers, data transfer, and monitoring that, *in aggregate*, benefitted a would-be competitor.

Defendants argue that *certain* information in the SDG is "standard in the industry" or "non-unique." (DB30). That implicitly acknowledges other information in the SDG is not. Likewise, that competitors may have deployment guides (DB30, n.12), does not rebut that APT's is unique.

APT's experts testified that these Compilations provided a "masterclass" in building a business focused on predictive analytics software. (OB9) (citing Appx5333; Appx5539-50). They testified that, even if *parts* of these Compilations were publicly available, *in aggregate* they were confidential and proprietary. This

provided unique value to a competitor like MarketDial, enabling it to develop, construct and use software that unfairly competed with APT's. (OB9) (citing Appx5384, Appx5050). Defendants ignore this.[7]

**Defendants Ignore Facts Demonstrating Misuse**

Defendants describe MarketDial as an "upstart competitor" and "nascent startup." (DB2, 4). Yet MarketDial had no business or ability to compete before stealing APT's trade secrets. Its business was parasitic.

Defendants admit Stoddard spent five months at McKinsey reviewing documents regarding APT's T&L software. (DB4-5). They ignore that these documents included the PCB and SDG.[8] Defendants also ignore that Stoddard induced APT to send him information, promising to get it into the "right hands." (OB2).

Defendants assert that Davis believed he invented the idea of "automated business testing." (DB5). This is disputed, irrelevant, and, given APT's then-16-year prominence as industry leader, not credible. Irrespective, before January 2015, Davis knew otherwise, because Stoddard sent him APT materials, prompting Davis to seek more "intel" about APT. (OB21) (citing Appx3914, Appx6517). Defendants knew

---

[7]RSOFs 45a(i), 45b(ii), 45c(ii-iv), 46b, 51, 122, 127 and 129 rebut Defendants' contrary argument. (DB9).

[8]Defendants argue that this download included material they *did not* use. (DB55-56, n.19). Irrespective, they *did* use APT's trade secrets, including the PCB and SDG, as FTI found.

their conduct was improper; Stoddard told Davis "You didn't get this from me," (OB21) (citing Appx3915), and acknowledged they faced "disaster" if APT discovered their misconduct. (OB3, 22) (citing Appx7172).

Defendants inaccurately claim that Davis and Stoddard started MarketDial in April 2016. (DB15). But in February 2015 they incorporated MarketDial (Appx2403) and started stealing APT's trade secrets. (OB21) (citing Appx6515-16). Moreover, Stoddard clandestinely downloaded the PCB and SDG as he left McKinsey in April 2016. (OB23) (citing Appx5685-88).

Defendants also ignore FTI's finding that, after starting MarketDial, Defendants used the SDG for a Lululemon pitch. (OB24) (citing Appx5510, Appx5583-86)).

**APT Irrefutably Established Its Trade Secrets**

Defendants cannot overcome that APT established that the PCB, Customized Feeds and SDG are trade secrets, and certainly presented disputed fact issues necessitating a trial.

**A.    PCB**

Defendants fault APT for "insist[ing] that the whole PCB was a compilation trade secret," (DB25) and make similar assertions regarding the SDG. (DBG47). Yet

*USA Power I*[9] and *Rivendell* require consideration of the whole document for assessing compilation secrets.

Defendants erroneously assert that APT "made no real effort to explain how any of this information [in the PCB] connected together to form a unique whole." (OB25). Kursh explained that the PCB showed the "innerworkings" of APT's business, and: a) shows how APT meets the needs of specific industries and how retailers use APT's solutions; b) lists critical business issues that a vendor could ask prospective retail customers; c) provides case studies showing how APT benefitted retail customers; d) demonstrates how to graphically illustrate incremental benefits and summarize tests; e) explains APT's ▮▮ Process ▮▮ process; f) describes how to reach customer personnel not involved with analytics and g) shows steps for rolling out T&L. (OB46-47). Kursh explained the PCB "provides the steps necessary for a vendor to compete in the various sectors," including how to build "must have" tests. (OB49).[10] It helped MarketDial appear credible, despite lacking any industry experience. (OB47-49).

APT demonstrated that the PCB in aggregate was non-public. Thomke called it a nonpublic "unique integration of information," identifying 54 slides containing

---

[9]Defendants cite *USA Power I* only to note that the District Judge was on the Utah Supreme Court when that decision was issued. (OB22 n.10). This only makes the judge's misapplication of that ruling more indefensible.

[10]APT's experts, including Kursh, were not "conclusory." (DB42). Kursh provided a 59-paragraph "walkthrough" of the PCB. (Appx29).

confidential information, including case studies. (OB49). Weidman, APT's corporate representative, corroborated this. (OB48-49).[11]

APT likewise demonstrated the Court erroneously concluded that APT did not show the PCB's value.[12] (Appx29, n.18). Rather, APT analyzed 34 slides showing the wealth of valuable information compiled therein. (OB11-14). Defendants focus solely on the PCB's discussion of optimal control groups—yet the PCB specifically described its value, detailing how APT used these to identify thousands of ▮Category▮ attributes to ▮Result▮, which APT tested against hundreds of thousands of simulations on customer data. (OB49) (citing Appx5069-72).[13]

## B. <u>Customized Feeds</u>

Defendants misleadingly argue that the Customized Feeds were non-proprietary because the agreements governing them stated the customer would retain title to the "data *provided by Licensee*" (*i.e.*, that customer). (DB44) (emphasis added). That refers to the client's raw data. But the agreements gave APT title to *Customized Data* (*i.e.,* the "data structure") and prohibited its disclosure. (Appx4582-93).

---

[11]Defendants cite their SOF to argue that APT acknowledges that "large swaths" of information in the PCB is public. APT's RSOFs 45, 46, 122, 124-27, 129 refute that.
[12]By contrast, in *Synopsys, Inc. v. Risk Based Sec., Inc*., 70 F.4th 759, 770-71 (4th Cir. 2023), plaintiff could not show that any of its 75 claimed trade secrets had value.
[13]Rather than "ape" the statutory definition to suggest independent value, (DB24), APT provided numerous substantive examples.

Defendants erroneously suggest that because APT sought certain raw data from ███ Client ███, APT's subsequent customization is not protectible. (DB45). Rather, Kursh identified the critical difference APT's efforts made in customizing data so it could be effectively used in APT's (and MarketDial's) analysis.

Defendants argue that *some* information about feeds appears in an APT white paper. (DB44). However, this does not concern the customization for specific customers at issue, which was not public. (*See* RSOF 97 (Appx7450-51)).

Defendants argue that having APT's Customized Feeds made their work "more difficult," (DB45-46), which is merely another disputed fact that should have precluded summary judgment. (*See* RSOF 102 (Appx7451-52)). Defendants mischaracterize what they cite, which stated that MarketDial would have to do additional work to adapt APT's Customized Feeds to its desired format. (Appx3196-97; Appx3201-02). The argument also admits Defendants worked with these Customized Feeds, confirming misuse. Defendants' misconduct additionally demonstrates Defendants induced APT clients, including ███████ Client ███████ and ███ Client ███, to send them APT's Customized Feeds, which they used to create their rival product, while avoiding R&D costs. They then underpriced APT and stole clients.

Defendants argue that APT was "totally abstract" in showing Customized Feeds' value. Instead, RSOFs 94, 100-102 (Appx7448-52) show their value to

Defendants, as Defendants told prospects, including Signet Jewelers and Macy's, that they could "route APT's files."

## C.  SDG[14]

Defendants call the SDG "conclusory," erroneously claiming it does not describe specific architecture, server types, identifiable software, routines, features or protocols. (DB28, 47). Regarding server types, for example, the SDG identified that APT's UI includes a ██Architecture██, ██ Architecture ██ and ██ Architecture ██, with a ██ Architecture ██ running in a more ██ Environment ██. (OB18). Defendants erroneously claim APT could not show that this information was uniquely secret and valuable (DB29), yet APT's experts explained that by identifying APT's choices, the SDG enabled a competitor to either copy APT or differentiate itself, saving time and reducing error. Defendants used APT's information to differentiate themselves, (DB48), confirming its value.

Defendants falsely argue that APT claims a trade secret in others' products or the "industry standard." (DB8, 30, 46). APT's secret is not in the underlying technology, but rather APT's *choices* of technologies, among available options, including specific types of servers, software, data transfer protocols and third-party

---

[14]These Compilations differ from that claimed in *Sit-Up Ltd v. IAC/InterActiveCorp.*, 2008 WL 463884, at *10 (S.D.N.Y. Feb. 20, 2008), which encompassed plaintiffs' "overall business method," allegedly consisting of 100 additional claimed secrets, including many that were "comic in their obviousness."

services. By uniquely compiling this information, the SDG provided a blueprint for how to deploy a competing business analytics product.

Likewise, that a competitor could develop its own deployment guide without accessing APT's (DB30, n.12, 48) sidesteps the fact that stealing the SDG enabled Defendants to create their architecture more reliably, faster and less expensively.

APT submitted sufficient evidence "to pin down the [claimed] secrets" (DB22) (citation omitted), delineating so in the RSOF and hundreds of exhibits.[15]

## Defendants' Challenges To APT's Trade Secrets Fail

Defendants raise multiple meritless challenges to whether the PCB, Customized Feeds and SDG are trade secrets.

*First,* Defendants substitute soundbites for analysis, erroneously suggesting APT missed its "put up or shut up moment" (DB2, 32), that trying to pin down APT's trade secrets was like "nailing jello to a wall,"[16] that APT used "jargon" and

---

[15]Defendants erroneously state that in the RSOF, APT "threw all of its weight behind its prior interrogatory answers." (DB33). Again, APT submitted 59 summary judgment exhibits and drew upon Defendants' 143 exhibits.

[16]Defendants quote *NEXT Payment Solutions, Inc. v. CLEAResult Consulting, Inc.,* 2020 WL 2836778 (N.D. Ill. May 31, 2020) (DB21). The jello analogy wobbles. *NEXT* concerned software features, not a compilation. The court held that, for software, a trade secret plaintiff must show underlying methods, and not merely functions. *Id.*, *15. Instead of methods, plaintiff claimed trade secrets in the software's "user experience" and "algorithms and rules to automate certain tasks." Plaintiff failed to present evidence of its software, including computer printouts, formulae, memoranda or tangible technical data. By contrast, the PCB and SDG are tangible slide compilations. Similarly, APT presented evidence demonstrating how

14

"unexplained string citations" (DB2) and provided "high-level summar[ies] for the purpose of the alleged trade secret[s] without describing" that they were not generally known or readily ascertainable.

*Second*, APT never "point[ed] to broad areas of technology" and asserted that something must be a secret, as Defendants argue. (DB20) (citation omitted). APT always identified the PCB, Customized Feeds and SDG—discrete compilations—as trade secrets.[17] That APT previously identified additional trade secrets (DB34, 50-51) stolen by Defendants is immaterial.

*Third*, Defendants falsely argue that APT makes new arguments on appeal. (DB13, 36-40). Rather, APT supported every statement with a summary judgment record cite. Every PCB and SDG slide and all evidence concerning Customized Feeds discussed in the OB was in that record, including expert analyses, witness testimony and documentary evidence. Defendants' cases are distinguishable. In *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1363 (Fed. Cir. 1999), plaintiff admitted raising a new argument concerning construction of a patent claim but defended this as involving a legal question; this Court disagreed. In *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009), this Court held that because plaintiff failed to argue in a patent case that the Seratron System lacked

---

it customized the raw data of ██Client██ and ██Client██ and others, increasing its value.

[17]*See* Appx6431-98; Appx2519; OB15-17.

specified claim limitations, it waived this argument on appeal. In *June v. Union Carbide Corp.*, 577 F.3d 1234, 1247 (10th Cir. 2009), plaintiff made new causality arguments on appeal. In *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998), where defendant presented facts and exhibits responding to sexual harassment allegations, plaintiff waived claims of error regarding those it disregarded before the district court. In contrast here, APT documented its arguments below with record citations.

*Fourth*, while Defendants repeatedly attack APT's interrogatory answers (DB6-7, 26, 30, 35, 50, 54), these attacks are factually incorrect and legally immaterial. Rather than being "generalized," these answers include 70 pages of detail, specifically discussing the PCB, Customized Feeds and SDG. (Appx1220-23). Defendants note that APT did not mention the SDG in one place in its interrogatory answers (DB30), yet APT described it extensively elsewhere in its answers. (Appx1220-23). Moreover, APT relies upon 201 other summary judgment exhibits, making Defendants' argument immaterial.

*Fifth*, Defendants mischaracterize the PCB and SDG as "high level marketing documents" because APT provided them to McKinsey so McKinsey could recommend T&L to its clients. (DB5). The PCB's title refutes that: it is a 67-slide "briefing" for APT's business "partners" about its "capabilities." Rather than being "high level," these gave McKinsey "depth" about how APT's solution worked.

(OB6). Likewise, the SDG's warning that misuse would result in "severe civil and criminal penalties," (Appx3726), disproves it is a "marketing" piece.

*Sixth*, Defendants erroneously assert that no trade secret APT identified "disclose[d] any secret about how [T&L] does what it does." (DB5; *see also* DB24 (arguing APT did not "provide any detail or explaining of 'how' it does anything"; DB41-43 (arguing the PCB does not explain "the actual 'how'"). (DB41-43). Here, the PCB describes "how" APT's business model succeeds and provides extensive information regarding "four critical business factors": 1) industry-specific information; 2) measuring incremental impact in predictive analytics software; 3) institutionalization of business analytics software at subscribers; and 4) consulting pitch deck and stats methodology. (OB10-11). The PCB also shows "how" T&L helped achieve superior outcomes. Slide 23 describes how T&L automatically generates key outputs and updates while testing, including analysis settings, result summary, trend chart, result detail, margin result detail and margin category impact. Slides 32-33 show 47 categories tested by retail clients. (OB11-14).

Because this case concerns a business model/blueprint, Defendants' non-compilation cases are inapposite. *See IDX Sys. Corp. v. Epic Sys. Corp.,* 285 F.3d 581 (7th Cir. 2002) (software); *Coda Dev. v. Goodyear Tire & Rubber Co.,* 667 F. Supp.3d 580 (N.D. Ohio 2023) (product design).

*Seventh*, Defendants claim that *portions* of the compilations were disclosed in YouTube videos, academic publications, trade show handouts, white papers and patents. (DB6-10, 35).[18] The question again is not if portions of a compilation were publicly disclosed but whether the compilation itself was. Defendants cannot argue that the PCB, SDG or Customized Feeds in aggregate were disclosed. APT's evidence, cited in the OB, demonstrates otherwise.

*Eighth*, Defendants cite inapposite cases to argue that APT did not identify its Secrets. *Utah Medical Products v. Clinical Innovations*, 2000 WL 1838586 (Fed. Cir. 2000) (DB19-20), did not concern compilations but rather 17,000 documents which constituted mere "background information," mostly which were public. Unlike here, where MarketDial bragged how every new customer was taken from APT, Utah Medical did not provide "*any* evidence that it was harmed."[19] *See Coda Dev. S.R.O. v. Goodyear Tire and Rubber Co.*, 667 F. Supp.3d, 580, 607 (N.D. Ohio

---

[18]APT distinguished what the patent disclosed regarding optimal sample selection at Appx7437.

[19]While Defendants cite *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020), to note that a trade secret plaintiff may not rely upon catchall phrases or incorporate by reference hundreds of documents alleged to constitute a trade secret, the Ninth Circuit there found neither infirmity applied, and neither does here. Rather, the Ninth Circuit reversed summary judgment for a trade secret defendant, finding that plaintiff sufficiently identified trade secrets in its software, including its uniquely designed tables, columns, account number structures, and methods of populating data. *Inteliclear* holds that a trade secret plaintiff's burden on summary judgment "is only to identify *at least one trade secret* with sufficient particularity to create a triable issue." *Id.* at 659 (emphasis added). APT's burden was less, as Utah law does not require particularity.

2023) (no compilation; document was created after case was filed) (OB39, n.14);

*REXA, Inc. v. Chester*, 42 F.4th 652 (7th Cir. 2022) (no compilation; just vaguely described actuator prototype which admittedly included public aspects); *Imax Corp. v. Cinema Techs., Inc*., 152 F.3d 1161 (9th Cir. 1998) (no compilation; just motion picture product where plaintiff identified no basis for a trade secret).

*Ninth*, Defendants discuss trade secrets that are not on appeal. (DB6, n.3). This sidesteps that the PCB, Customized Feeds and SDG *are* trade secrets.

### Defendants Cannot Refute The Court Misallocated The Burden

Defendants note that the Court concluded that APT failed to carry its "threshold burden," justifying summary judgment. (DB17). This ignores that the Court erroneously held APT to the burden of a trade secret plaintiff *at trial*, not summary judgment, and denied APT the benefit of required inferences. (OB 45-54, 56-58). This led the Court to grant Defendants summary judgment even though they failed *their* burden.

Like the Court, Defendants rely principally on *USA Power II*, 372 P.2d 629 (Utah 2016),[20] and *Bimbo Bakeries USA, Inc. v. Sycamore*, 39 F.4th 1250 (10th Cir. 2002), to establish APT's "threshold burden" as nonmovant on summary judgment, (*see* DB19-22, 28, 31, 49, 52, 56), disregarding that both decisions followed trials.

---

[20]Defendants misleadingly claim the Opinion cites *USA Power I and II* "17 times." (DB22, n.10). It cites *USA Power I* twice (Appx18, Appx37), and *USA Power II* 11 times. (Appx11, Appx15-18, Appx21, Appx24-26 & n.13, Appx36).

In its OB, APT demonstrated how this led the Court to impose an improper burden on APT, while freeing Defendants from theirs. (OB57-58). Defendants disregard this.

Thus, APT noted that by emphasizing *USA Power II*, the Court neglected *USA Power I*, which reversed a grant of summary judgment in a compilation trade secret case because plaintiff presented enough to reach trial. Defendants ignore that *USA Power I* found a protectible compilation sufficiently identified for summary judgment in otherwise public materials that established plaintiff's "vision." So here, Defendants cannot rebut that APT's blueprints, roadmaps and customization efforts are equally protectible. (OB34).

Defendants argue that *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986), holds that the burden of a nonmovant on summary judgment is to establish what would be necessary to withstand a directed verdict motion. (DB18). Yet that is distinct from what a plaintiff needs to prevail at trial. Moreover, APT's cases holding that a trade secret plaintiff must only show "some evidence" of its trade secret at summary judgment—*Dodson Inc. v. Altendorf*, 347 F. Supp. 2d 997, 1000-01 (D. Kan. 2004), and *OsteoStrong Franchising, LLC v. Richter*, 2020 WL 4584007, at **1, 10 (D.N.M. Aug. 10, 2020)—specifically rely on *Anderson*.[21] Defendants argue

---

[21]In *Dodson*, plaintiff failed that burden by not identifying tangible customer lists defendant misappropriated and which had value derived by not being generally known or ascertainable. 347 F. Supp. 2d at 1012. In *OsteoStrong*, plaintiff

that *Dodson* does not hold that the "some evidence" standard is distinct from the trial standard (DB18, n.8), yet that is self-evident: it is the difference between "some evidence" that a trade secret exists and "proving" its existence, the trial standard. *See Bimbo*, 39 F.4th at 1262.

Defendants also ignore that two *Bimbo* district court decisions denying summary judgment further demonstrate how the Court flipped the burden.[22] The *Bimbo* district court held that, for summary judgment, it was movant's burden to show compilations were public. (OB58, 63). Here, the Court indisputably required APT to show which elements of its Compilations were non-public. (*See* Appx11). The *Bimbo* court also held that movant had to show it did not misappropriate. (OB58, n.26). The Court ignored both issues.[23]

---

disregarded defendant's 85 factual allegations and its claimed trade secrets were "common knowledge." 2020 WL 4584007, at *6.

[22]The *Bimbo* decisions demonstrate the distinct burdens between summary judgment and trial: plaintiff defeated summary judgment yet lost on standard of proof at trial. (*See* OB56, n.22).

[23]Defendants cite *Quest Solution, Inc. v. RedLPR, LLC*, 2023 WL 11910450, at *44 (D. Utah Aug. 3, 2023), to argue that a plaintiff must define its trade secrets in a way that allows the UUTSA to be meaningfully applied. (DB21). However, in finding that plaintiff could not identify a compilation trade secret, *Quest*, like the Court below, misapplied the standard, by holding plaintiff to the burden for establishing a trade secret at trial, citing *Bimbo*, 39 F.4th 1250, and *USA Power II*, *id*. at **51-52, while ignoring *USA Power I*, *Rivendell*, and the *Bimbo* summary judgment decisions. *Quest* is factually distinguishable, because plaintiff described its secrets inconsistently at different phases of the litigation, *id*. at *43, presented no expert testimony supporting its secrets and could not show what was unique in its compilations. *Id.* at *44.

Defendants do not dispute that APT only needed to show some evidence of one trade secret to survive summary judgment. (OB38) (citing *Ajuba Pro Tech, Inc., v. VWR Int'l LLC*, 2014 WL 3520525 (E.D. Mich. July 14, 2014)). APT exceeded that —showing that the PCB, Customized Feeds and SDG were each trade secrets.

## The Court Denied APT Inferences

Defendants disregard APT's examples of where it was denied the benefit of inferences and wrongly claim a) APT was "equivocal" about the "value proposition of the PCB" despite that, *inter alia*, Kursh testified that the PCB would teach a competitor how to estimate costs to build such tests and perform the functionality necessary to compete in a sector; b) APT was "cursory" regarding the Customized Feeds, despite that APT submitted 38 pages of expert reports and other evidence showing these are protectible secrets that MarketDial misappropriated and benefitted from, and c) APT "equivocated" regarding whether practices in the SDG were generally known or readily ascertainable, despite that APT's corporate representative testified they were not. (OB48-51, 54-56).

## The Court Erroneously Ruled As To The Complete PCB

As movants, Defendants defined the secrets they were challenging. They always possessed the complete, 67-slide PCB[24] APT's experts relied upon.[25] Nonetheless, they made the litigation choice to solely challenge a partial, 28-slide version that omitted the 40-slide appendix containing a trove of confidential, competitively-valuable information. *See* OB10 (citing Appx6330, SOF 42). Because, as Defendants admit (DB55), they did not challenge that PCB in their Motion, the Court erred in deciding its trade secret status.[26] *See Edwards v. Honeywell*, 960 F.2d 673, 674 (7th Cir.1992) ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B—a ground the movant might have presented but did not.") (citation omitted).

Defendants argue that their challenge to "all" of APT's trade secrets meant all versions of that compilation were at issue. (DB53). Again, Defendants admit they

_____

[24]Defendants argue that APT did not identify in its interrogatory answers what trade secret information in its 67-slide version was not in the 28-slide version (DB54). However, APT did so in its summary judgment record, including Kursh's Supplemental Report. (Appx5545-72). Irrespective, the trade secret is in the whole PCB—not individual slides.

[25]Because Defendants knew APT's experts used the 67-slide version, they baselessly blame APT for their use of a partial exhibit. (DB55).

[26]That APT identified different versions of the PCB as distinct trade secrets (DB55) confirms that Defendants knew that by challenging the 28-slide version they were not challenging the 67-slide version.

did not "specifically" challenge the complete version (DB55), but only the 28-slide version. That waived a challenge to the former.

Defendants' cases do not support that the Court could "sua sponte" rule on a trade secret Defendants did not challenge. In *D Three Enters., LLC, v. SunModo Corp.*, 890 F.3d 1042, 1048-49 (Fed. Cir. 2018), this Court affirmed that a district court could decide summary judgment in a movant's favor based on an *argument* about a patent application the movant had not made. However, movant there had introduced the application. Here, the Court did not make a decision based on an *unmade argument*, but on a different compilation than the one Defendants challenged. In *Bridgeway Corp. v. Citibank*, 201 F.3d 134 (2d Cir. 2000), the court affirmed a sua sponte grant of summary judgment against a movant seeking to enforce a Liberian judgment because of Liberia's corrupt judicial system, but non-movant's opposition raised that defect. That is different from finding *for* a movant whose motion omits an asserted trade secret. In *Kanaday v. City of Kiowa*, 590 F.3d 1161 (10th Cir. 2010), the court decided a discrimination case against movant based on his hiring date, but movant had raised that issue in his summary judgment motion. APT filed no summary judgment motion. In *A.M. v. Holmes*, 830 F.3d 1123 (10th Cir. 2016), plaintiff requested a ruling regarding qualified immunity, on which the court based its decision. Here, APT requested no ruling on the complete PCB, but submitted it solely to show Defendants' motion was defective.

## The Court Disregarded Controlling Law Regarding Compilation Trade Secrets

Defendants ignore the two key controlling decisions governing review of the Court's Order.

*First,* Defendants ignore the Tenth Circuit decision concerning summary judgment in trade secret compilation cases—*Rivendell*, 28 F.3d 1042 (cited OB31, 33-35, 59). There, the Tenth Circuit reversed a grant of summary judgment in a compilation trade secret case because the district court, as here, examined the compilation "bit by bit" and shifted the burden to plaintiff to "demonstrate the protectability of its elements of some of them, rather than the protectability of its software system as a whole." 28 F.3d at 1064 (cited OB35). *Rivendell* held it was error to consider elements of the compilation, "rather than the combination." 28 F.3d at 1064 (cited OB35).[27] The Court made this error. *Rivendell* forbids Defendants' argument that APT had the burden of showing "what portions of the described systems, methodologies and documents were secret or why." (DB13). Defendants note that APT "would have the Court …view the …compilations more holistically." (DB51). Exactly. *Rivendell* requires this.

---

[27]*Rivendell* approvingly cited *Anderson*, 477 U.S. 242 (cited DB18), to hold that affidavits, depositions and briefs before the district court presented genuine issues of material fact and faulted the trial court for making determinations "of contested essential facts" and credibility. 28 F.3d at 1045.

Defendants note that a plaintiff must provide reasonable details regarding what makes up the secret. (DB49). APT did, presenting substantial evidence demonstrating why the PCB, Customized Feeds and SDG are each in aggregate valuable and nonpublic. (OB7-19, 46-54).[28] Defendants question whether APT's "overarching compilation" of all secrets raised below existed pre-litigation (DB52, n.18), but cannot refute that those on appeal did. Stoddard downloaded the PCB and SDG in 2016, and Defendants thereafter induced ███Client███ and █Client█ to provide APT's Customized Feeds to create their rival product.

Defendants ignore—and thus concede—the required analysis under *USA Power I*'s six factors for demonstrating a protectible compilation trade secret and that APT satisfied each. (OB40-42).

Defendants cite *Prysmian Cables & Sys., USA, LLC v. Szymanski*, 573 F. Supp. 3d 1021 (D.S.C. Nov. 29, 2021), which actually supports APT's position. *Prysmian* held that a compilation could be a secret even if portions were publicly available. *Id.* at 1037. It found plaintiff established a trade secret in finances, prices, margins, customer contacts, product strengths, weaknesses, strategies and estimates, business plans, costs, technology and technical data.[29]

---

[28]Defendants again falsely suggest that APT solely relied on its interrogatory answers at summary judgment (DB50), disregarding its trove of other evidence.
[29]Defendants' other cases are inapplicable. In *Calendar Res. LLC v. StubHub, Inc*., 2020 WL 4390391 (C.D. Cal. May 13, 2020), plaintiff claimed a compilation secret in "factors, datapoints, methodologies and areas of emphasis" concerning a software

While ignoring *Rivendell* and *USA Power I*'s six-factor analysis, Defendants rely on inapposite cases that do not concern compilations. Like the Court, Defendants emphasize *IDX,* 285 F.3d 581, calling it the "germinal" authority on the threshold requirement for a trade secret (DB14-15) and citing it 18 times. However, *IDX* did not concern compilations, but rather a 43-page post-litigation document created to identify trade secrets. (*See* OB61-62). Defendants ignore that Seventh Circuit precedent governing compilation trade secrets mirrors Tenth Circuit standards and supports APT, and that *IDX* is inapplicable where evidence shows a defendant stole actual trade secrets. (OB61, nn.30-31). The 43-page document at issue in *IDX* was merely a description of the alleged trade secrets, not secrets that defendants there ever possessed. Here, MarketDial actually stole and used the PCB Customized Feeds and SDG.

Defendants further ignore that the Tenth Circuit has not adopted *IDX*'s standard. (OB61, n.29). Defendants also ignore that APT satisfied *IDX*'s requirements anyway—showing its alleged trade secrets are valuable, not known to

---

system for event planning. Plaintiff listed 14 technical terms which might be a secret but articulated none with specificity. APT provided specificity why the PCB, Customized Feeds, and SDG are secret. In *Double Eagle Alloys, Inc. v. Hooper*, 2024 WL 3166921 (N.D. Okla. June 25, 2024), the court found no secret where plaintiff's ownership was questionable, and it provided no specifics regarding what was secret in its specifications, pricing, margins, costs, and drawings. In *Waterville Inv., Inc. v. Homestead Sec. Ntwk., Inc.*, 2010 WL 2695287 (E.D.N.Y. July 10, 2010), plaintiff was conclusory in claiming a trade secret in a technique for making material more concise.

others who may profit from their use and handled in a manner reasonably designed to protect secrecy. (DB15).

Defendants note that this Court has cited *IDX* twice (DB15), yet both were appeals from trials outside the Tenth Circuit. *Alifax Holdings SPA v. Sire Analytical Sys. SLR*, 2024 WL 2932910 (Fed. Cir. June 11, 2024), affirmed a decision following trial that a process for acquiring a signal from blood samples was not a trade secret.[30] *Olaplex, Inc. v. L'Oreal USA, Inc.*, 855 F. App'x 701 (Fed. Cir. 2021), is not about compilations and procedurally inapposite. (OB63). It reversed a JMOL denial following a jury verdict where a trade secret plaintiff admitted prior art existed and patent applications disclosed alleged secrets.[31]

### The Court Erred In Finding Particularity Is Immaterial

Defendants admit that "Utah law eschews any defined 'particularity requirement' under the UUTSA," (DB21), yet erroneously suggest it made no difference because *USA Power II* (again, applying the trial standard) requires defining the secret so the UUTSA can be meaningfully applied. (DB21; *see also* DB19 (describing DTSA and UUTSA as "equivalent")). This ignores that even the Court acknowledged that federal law "clearly demands a much higher degree of

---

[30] *Alifax* relied on another post-trial appeal, *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655 (4th Cir. 1993).
[31] *TLS Mgmt. & Mktg Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46 (1st Cir. 2020) (DB14), reversed a bench trial decision that capital preservation reports and tax strategy were trade secrets.

particularity and specificity in the demarcation of trade secrets" making Utah law "more lax." The only reasonable reading is that it is easier for a plaintiff to establish a trade secret under the UUTSA than under the DTSA. Yet, the Court erroneously assumed because it found no DTSA claim, the UUTSA claim failed too. (OB65). Irrespective, APT satisfied <u>both</u> the DTSA standard and the UUTSA's more lenient standard.

## **<u>Defendants' Misuse Helps Demonstrate That APT's Compilations Are Secrets</u>**

Defendants cannot dispute evidence showing they stole and misused the PCB, Customized Feeds and SDG. They acknowledged they faced "disaster" if caught. The SDG warned that misuse would result in severe civil and possibly criminal penalties. Defendants disregard that one does not risk losing their job, savings and liberty for something non-valuable or publicly available.

Defendants misread *USA Power II* in arguing it prohibits *any* consideration of behavior showing misuse in determining whether a trade secret exists. Rather, it held that one "cannot establish the existence of [a] trade secret through evidence of misuse," 372 P.3d at 653 n.67, relying upon *CDC Restoration & Construction v. Tradesmen Contractors*, 274 P.3d 317, 324 (Utah 2012). *CDC*, in turn, holds that one cannot establish trade secret status "by use *alone*," because that would collapse the first and third elements of the trade secret test. But it follows that evidence of use, if combined with other evidence, is proper to establish this. APT does not argue

that its trade secrets should be based on Defendants' misuse "alone." Yet the Court

mistakenly refused to consider Defendants' misuse for any purpose.

### The Court Erred In Dismissing APT's Third-Party Beneficiary Claim

The record demonstrates that Stoddard's Confidentiality Agreement with

McKinsey acknowledged that a customer's confidential information belonged to it

and prohibited Stoddard's use of that except for client purposes. Even if Stoddard

did not know APT would become McKinsey's client when he signed the contract,

he knew clients which provided McKinsey confidential information were protected

under that Agreement.

While *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382

(Utah 1989), involved circumstances where plaintiff was known at the time of the

agreement (DB60), as the Court held below (Appx48), nothing in Utah law requires

that a specific person or entity be known at the time of a contract for it to be a

beneficiary—only that the attributes of the defined class of protected party be

identified. *See also M.H. Walker Realty Co. v. American Surety Co. of New York*, 211

P. 998, 1004 (Utah 1922) (same).

Therefore, Defendants cannot overcome that APT sufficiently stated a claim.

Defendants quote *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs, Inc.*,

28 P.3d 669, 684 (Utah 2001), but that supports APT, as the Confidentiality

Agreement was specifically intended to protect McKinsey clients, such as APT, as

Stoddard expressly acknowledged. (Appx7172) Defendants' other cases are distinguishable. Unlike *Brodkin v. Tuhaye Golf, LLC*, 355 P.3d 224 (Utah Ct. App. 2015), where an owner of landlocked property was merely an incidental beneficiary of a reciprocal easement, APT was not an incidental beneficiary of the Confidentiality Agreement, but an intended one who provided confidential information with the expectation it would be protected. *See also Wagner v. Clifton,* 62 P.3d 440 (Utah 2002) (because contract referred to a single "distributor," second distributor was not an intended beneficiary); *Lilley v. JP Morgan Chase*, 317 P.3d 440 (Utah Ct. App. 2013) (where appraisal agreement stated it was strictly for a lender's benefit, third-party mortgagor was not beneficiary).

## CONCLUSION

For the foregoing reasons and those in the OB, APT requests that this Court reverse the grant of summary judgment for Defendants regarding its trade secret claim and reverse the grant of Defendants' motion to dismiss APT's contract claim.

Dated: November 4, 2024

Respectfully submitted,

*/s/ David B. Goroff*
David B. Goroff
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, IL 60654
Phone: 312-832-4500
dgoroff@foley.com

Pavan K. Agarwal
**FOLEY & LARDNER LLP**
3000 K Street NW, 6th Floor
Washington, DC 20007
Phone: 202-672-5300 (PKA)
pagarwal@foley.com

Kirk R. Ruthenberg
Nicholas H. Jackson
**DENTONS US LLP**
1900 K Street, NW
Washington, DC 20006
Phone: 202-408-6410 (KRR)
Phone: 202-496-7407 (NHJ)
kirk.ruthenberg@dentons.com
nicholas.jackson@dentons.com

Spencer D. Hamilton
**DENTONS US LLP**
100 Crescent Court, Suite 900
Dallas, TX 75201
Phone: 214-259-0982
spencer.hamilton@dentons.com

*Attorneys for Plaintiff-Appellant Applied
Predictive Technologies, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 24-1751

**Short Case Caption:** Applied Predictive v. Marketdial, Inc., et al.

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,997 words.

- [ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

- [ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 11/04/2024

Signature: /s/ David B. Goroff

Name: /s/ David B. Goroff

Save for Filing

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF SERVICE</u>

**Case Number** 24-1751

**Short Case Caption** Applied Predictive v. Marketdial, Inc., et al.

---

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

---

I certify that I served a copy of the foregoing filing on _____

by ☐ U.S. Mail ☐ Hand Delivery ☑ Email ☐ Facsimile
☐ Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Andrew L. Roth<br>Keith A. Call<br>Spencer Fane LLP | keithcall@spencerfane.com<br>aroth@spencerfane.com |
|  |  |
|  |  |
|  |  |
|  |  |

☐ Additional pages attached.

Date: 11/04/2024

Signature: /s/ David B. Goroff

Name: David B. Goroff

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 24-1751

**Short Case Caption:** Applied Predictive v. Marketdial, Inc., et al.

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains ___35___ number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☑ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 11/04/2024

Signature: /s/ David B. Goroff

Name: David B. Goroff