# United States Court of Appeals for the Federal Circuit

APPLIED PREDICTIVE TECHNOLOGIES, INC.,
*Plaintiff-Appellant*

v.

MARKETDIAL, INC., JOHN M. STODDARD, aka Johnny Stoddard, MORGAN DAVIS,
*Defendants/Cross-Appellants*

Appeal from the United States District Court
for the District of Utah, Case No. 2:19-cv-00496-JNP-CMR
Honorable Jill N. Parrish

## APPELLEES' MOTION FOR EXPEDITED SUMMARY DISPOSITION

KEITH A. CALL
RODNEY R. PARKER
ANDREW L. ROTH
**SPENCER FANE, LLP**
10 Exchange Place, Suite 1100
Salt Lake City, UT 84111
Phone: (801) 521-9000
keithcall@spencerfane.com
rrparker@spencerfane.com
aroth@spencerfane.com
*Attorneys for Appellees/Cross Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-1751; ~~2024-1805 (consolidated)~~

**Short Case Caption** Applied Predictive Technologies, Inc. v. MarketDial, Inc.

**Filing Party/Entity** MarketDial, Inc.; John M. Stoddard; Morgan Davis

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/13/2024    Signature: *[signature]*

Name: Keith A. Call

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| MarketDial, Inc. | | |
| John M. Stoddard | | |
| Morgan Davis | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable        ☐ Additional pages attached

| | | |
|---|---|---|
| Allan E. Anderson with Arent Fox Schiff | Jeff Leung with Arent Fox Schiff | Dana Finberg with Arent Fox Schiff, O'Hagan Meyer |
| Korey Rasmussen with Spencer Fane LLP | Lashel Shaw with Snow, Christensen & Martineau | Gregory Osbourne with MarketDial, Inc. |
| Andrew Ong with Goodwin Procter LLP | Neel Chatterjee with Goodwin Procter LLP | Samuel Sherry with Goodwin Procter LLP |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)   ☐ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable        ☐ Additional pages attached

## RELIEF SOUGHT

Pursuant to Federal Circuit Rule 36(a) and for the reasons stated below, Appellees MarketDial, Inc., John M. Stoddard, and Morgan Davis (collectively, "MarketDial") respectfully request a Judgment of Affirmance without Opinion.

Pursuant to Federal Circuit Rule 27(c) and the reasons stated below, MarketDial also respectfully requests that the Court expedite its Judgment of Affirmance.

## RULE 27(a)(2) STATEMENT

Counsel for MarketDial has conferred with counsel for Appellants, who has advised that they oppose the relief sought in this motion and that they intend to file a response.

## BACKGROUND

Last week, the district court awarded MarketDial over $2.8 million in attorneys' fees, ruling that the underlying suit from Appellant Applied Predictive Technologies ("APT") was "objectively specious" and anticompetitively designed to "to put an upstart competitor out of business." *See Applied Pred. Tech., Inc. v. MarketDial, Inc.*, No. 2:19-CV-

00496-JNP-CMR, 2025 WL 906182, *7-10 (D. Utah March 25, 2025) (unpublished) (hereafter, "Attorneys' Fee Order").

APT and MarketDial provide business analytics to their clients. MarketDial, founded in 2016, is a new competitor in the market. Prior to founding MarketDial, Appellee John Stoddard worked at a consulting firm, where he became privy to certain APT information. After leaving the consulting firm, Stoddard joined appellee Morgan Davis and founded MarketDial, which became APT's only serious competitor in the market. *See* Attorneys' Fee Order, *1.

APT sued MarketDial for patent infringement and trade secret misappropriation in the United States District Court for the District of Delaware on June 28, 2018. *See* Appx99. The case was removed to the District of Utah. Appx107.

Almost six years later, on March 27, 2024, the District Court entered summary judgment and a final judgment in favor of MarketDial. Appx1; Appx40. Having previously disposed of APT's patent infringement claims on a motion to dismiss, the District Court emphatically ruled that APT had failed to provide any evidence sufficient

3

to demonstrate the possible existence of a trade secret. Appx1-39. APT has appealed that decision in this case.

The court recently entered the Attorneys' Fee Order. In that order, the Court found APT's claims (the same ones reasserted in this appeal) to be "objectively specious and . . . subjectively made in bad faith." *Id.* at *4.

The District Court made the following observations in its Attorneys' Fee Order:

- "Throughout its course, this case has been heavily litigated, as evidenced by the docket entries exceeding 700, over 50 of which occurred after the court's entry of judgment. After nearly six years of litigation and intensive discovery, the court granted Defendants' motions for summary judgment and entered a judgment in favor of Defendants." *Id.* at *1.
- "[A]fter intensive discovery, it became clear that APT could not define a single trade secret, because none existed. Nor could it produce sufficient evidence relating to its alleged trade secrets' economic value." *Id.* at *2.

- "By keeping its alleged trade secrets undefined and ambiguous, APT was able to continue with the litigation, incurring expenses ***that it could afford as a bigger, more established company***." *Id.* at *3 (emphasis added).
- "Prior to MarketDial's creation, APT had no meaningful market competitors." *Id.* at *2.
- MarketDial "became APT's only serious competitor in the market." *Id.* at *1.
- "[APT] sought to aggressively litigate every issue, flooding the docket with motions and documents of so-called 'evidence' that amounted to nothing. ***It is apparent that this was done to put an upstart competitor out of business*** because no other motive could explain the amount of much time and money it invested in litigating a fruitless claim. And ***APT, a successful tech company that was acquired by Mastercard in 2015 for $600 million, had the resources to out-litigate MarketDial***. Thus, the court finds APT engaged in subjective misconduct and therefore its trade secret claim was pursued in bad faith." *Id.* at *5 (emphasis added).

- "APT's actions also give rise to a reasonable inference that ***this litigation was undertaken for the purpose of putting an upstart competitor out of business***. The court bases this conclusion on APT's knowledge of MarketDial's financial runway after targeted questioning in depositions, the intensity in which it litigated the case, the lack of support for its misappropriation claim, and the fact that ***MarketDial was APT's only real competitor and threat to its monopoly over the market***."

*Id.* at *4 (emphasis added).

## ARGUMENT

### I. THE COURT SHOULD ENTER A JUDGMENT OF AFFIRMANCE WITHOUT OPINION.

Federal Circuit Rule 36(a) provides:

The court may enter a judgment of affirmance without opinion, citing this rule, when it determines that any of the following conditions exist and an opinion would have no precedential value:
    (1)    the judgment, decision, or order of the trial court appealed from is based on findings that are not clearly erroneous;
    (2)    the evidence supporting the jury's verdict is sufficient;
    (3)    the record supports summary judgment, directed verdict, or judgment on the pleadings.

> (4) the decision of an administrative agency warrants affirmance under the standard of review in the statute authorizing the petition for review; or
> (5) a judgment or decision has been entered without an error of law.

This rule permits the Court to dispense with issuing an opinion that would have no precedential value, reflecting the Court's need to focus its limited time and resources on "the preparation of precedential opinions in cases which merit that effort." Fed. Cir. Internal Operating Procedure 10, ¶ 1 (Mar. 1, 2022). This rule also reflects the broad discretion afforded to federal appellate courts with respect to summary affirmance. *See Taylor v. McKeithen,* 407 U.S. 191, 194 n. 4 (1972) ("We, of course, agree that the courts of appeals should have wide latitude in their decisions of whether or how to write opinions. That is especially true with respect to summary affirmances.").

Affirmance without opinion is appropriate when the case is "an easy one to decide," the trial court's explanation for its decision was "clear and sound," and "no useful purpose would [be] served by [this Court] writing an opinion." *Sparks v. Eastman Kodak Co.,* 230 F.3d 1344, 1345 (Fed. Cir. 2000). Affirmance without opinion allows the parties to promptly "go on with their business without any extended delay." *Id.*

All of the circumstances warranting affirmance without opinion exist here. First, a decision in this case will have no precedential value in any subsequent case. The key issue in this appeal is whether, at summary judgment, APT identified a trade secret sufficient for a jury to apply the statutory definition of a trade secret. An opinion addressing this issue would not have any substantive precedential effect in future cases before this Court, all of which will turn on their own facts. A written opinion in this case might have *persuasive* value in a similar or analogous case, but it will not have binding *precedential* value. In other words, this Court's evaluation of the District Court's grant of summary judgment will only determine the rights of the parties to this appeal, not set a precedent for future trade-secret cases.

The only other issue on appeal deals exclusively with interpretation and application of Utah law regarding third-party beneficiary status (*i.e.*, whether APT was the intended beneficiary of a contract). Such state-law inquiries in federal appellate courts are plainly non-precedential. *E.g.,* *State v. Antonio Lujan,* 459 P.3d 992, 1003 (Utah 2020) ("We are of course not bound to follow precedent on federal due process in our formulation of state due process standards."); *Cottonwood Mall Shopping Center, Inc.*

*v. Public Serv. Comm'n*, 558 P.2d 1331, 1331 (Utah 1977) (conclusions of law made by federal courts on matters of state law are not binding on Utah Supreme Court).

Second, the District Court's summary judgment and dismissal orders are based on findings that are not clearly erroneous. This becomes apparent from a careful study of the briefs in this appeal, especially when one assumes the perspective of the District Court Judge reviewing the parties' summary judgment briefs and associated arguments. As the District Court stated:

> In its argument on Defendants' motion for summary judgment, APT offered only broad assertions and conclusory statements. Because APT could not provide a clear explanation of the trade secret, it instead consistently submitted numerous filings of so-called "evidence," none of which adequately described the trade secret but continued to rack up attorneys' fees. In its briefings on the matter, APT provided the court "paragraph-long string cites lacking explanatory parentheticals or any identifiable structure. In many cases, the citations seem to be included merely because they refer to the trade secret, not because they meaningfully disclose the secret, parse out known or readily ascertainable information, or explain the value proposition. In some cases, the citations are simply *non sequitur*."

Attorneys' Fee Order at * 3 (quoting District Court's Summary Judgment Order, Appx20). The District Court's recent and well-reasoned Attorneys' Fee Order emphasized that the summary judgment and dismissal orders

are based on findings that are not clearly erroneous. Based on the briefs submitted to this Court, it is "an easy [case] to decide[,]" and the District Court's explanation for its summary judgment and dismissal orders is both "clear and sound." *Sparks*, 230 F.3d at 1345.

Third, and for the same reasons, the record supports summary judgment and dismissal in this case.

Fourth and finally, the District Court's summary judgment and dismissal orders were entered without an error of law for the reasons articulated in MarketDial's Response Brief. This Court can readily conclude, based on a review of the briefs in this appeal, that the District Court committed no legal error.

Accordingly, "no useful purpose would [be] served" by a written opinion in this case. *Sparks*, 230 F.3d at 1345. This Court should "promptly notif[y]" these parties of the Court's decision and "allow [them] to go on with their business without any extended delay." *Id.* That is especially true for the reasons that follow.

## II. THE COURT SHOULD EXPEDITE ITS DECISION, REDUCING ANTICOMPETITIVE HARM.

This Court may expedite its decision on appeal for good cause. *See* Fed. R. App. P. 2(a). "The primary purpose of this rule is to make clear

the power of the courts of appeals to expedite the determination of cases of pressing concern to the public or to the litigants by prescribing a time schedule other than that provided by the rules." *Id.* R. 2, 1967 advisory comm. note. In the same vein, a motion to expedite proceedings "is appropriate where the normal briefing and disposition schedule may adversely affect one of the parties." *See* Practice Note to Fed. Cir. R. 27.

An expedited decision is warranted here based on the continuing harm to MarketDial and the public resulting from APT's predatory lawsuit and appeal. As the District Court ultimately recognized, APT undertook this litigation in bad faith, not to redress a trade secret misappropriation, but to put its only serious competitor out of business and to maintain its monopoly. *See* Attorneys' Fee Order, at \*\*1-5 (as quoted above); *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 535-36 (6th Cir. 2008) (unpublished) ("Filing a trade-secret action to restrain legitimate competition . . . , needless to say, is not proper.").

For over two decades, APT has charged its clients monopolistic licensing fees, allowing it to reap huge profits. MarketDial, represents the greatest competitive threat APT has ever seen. APT knows it does not need to prove actual trade secret misappropriation to win; it just

11

needs to strangle MarketDial with expensive, protracted litigation and appeals, even if the litigation ultimately fails. *See, e.g.,* Litigation as Predatory Practice, Hearing before Subcomm. on Intellectual Property, Competition, and the Internet, 112 Congress (Feb. 17, 2012) (discussing abusive litigation as predatory means to eliminate competitors), available at [https://www.govinfo.gov/content/pkg/CHRG-112hhrg72906/html/CHRG-112hhrg72906.htm](https://www.govinfo.gov/content/pkg/CHRG-112hhrg72906/html/CHRG-112hhrg72906.htm) ("Litigation as Predatory Practice"); Scott D. Helsen, "Preventing Predatory Abuses in Litigation Between Business Competitors," 36 William & Mary L. Rev. 1135 (March 1995), available at [https://scholarship.law.wm.edu/cgi/viewcontent.cgi?article=1763&context=wmlr](https://scholarship.law.wm.edu/cgi/viewcontent.cgi?article=1763&context=wmlr).

> As stated by a U.S. Congressional Committee:
>
> If the claim is merely plausible, then a predatory plaintiff is entitled to discovery of any matter relevant to the claims or defenses in the case. A defendant may be forced to turn over e-mails, business plans, customer lists, and other sensitive information. The more documents the defendant is forced to turn over, the higher the costs of the lawsuit. And the lawsuit forces the defendant to spend time and money on litigation rather than competing in the marketplace.
>
> For all of these reasons, litigation can be a particularly effective predatory strategy. Deployed strategically, litigation can put a competitor out of business, prevent a competitor

from ever entering the market, or force a competitor to reduce its output.

If a big company succeeds in using litigation to limit competition, then there is a dangerous probability that it could profit by raising prices on consumers.

Litigation as Predatory Practice, *supra*.

As laid out above, the District Court recently acknowledged that this predatory pattern is playing out here. Attorneys' Fees Order, at *4 ("APT's actions . . . give rise to a reasonable inference that this litigation was undertaken for the purpose of putting an upstart competitor out of business."). As this appeal progresses, the pattern plays out in a new arena. Every day that the appeal continues is another day that MarketDial is stifled as a competitor. Its output is reduced. Its ability to sell its product and services is reduced. Its ability to raise capital is reduced. And its ability to develop a superior product and sell it for less money is reduced. MarketDial's very existence is ultimately at stake.

Every day that this appeal is prolonged is also another day that the public is harmed due to decreased competition and higher prices. *Cf., e.g.*, *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 832 (9th Cir. 2022) ("[S]ometimes harm to a competitor also harms competition which, in turn, harms consumers."); *United States v. Line Material Co.*, 333 U.S.

287, 308 (1948) ("Public policy has condemned monopolies for centuries.").

For all these reasons, MarketDial respectfully requests that the Court expedite its decision in this matter.

**PROPOSED ORAL ARGUMENT DATES, IF NECESSARY**

Oral argument is unnecessary, especially in light of the thorough briefing and Judge Parrish's recent Attorneys' Fee Order. However, if the Court deems oral argument necessary, MarketDial is currently available for argument as indicated on MarketDial's Response to Notice to Advise of Scheduling Conflicts.

**CONCLUSION**

In a thoughtful and well-reasoned dismissal orders and the subsequent Attorneys' Fee order, the District Court not only ruled in favor of MarketDial, but determined it was not even close. The District Court further found that APT brought this lawsuit in bad faith in order to maintain its monopoly. This Court should swiftly put an end to APT's use of the Courts to maintain its monopoly by summarily affirming the District Court without argument and without opinion.

DATED this 2nd day of April, 2025.

                              **SPENCER FANE LLP**

                              */s/Keith A. Call*
                              Keith A. Call
                              Rodney Parker
                              Andrew L. Roth
                              *Attorneys for Defendants*

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 24-1751

**Short Case Caption:** Applied Predictive Technologies v. MarketDial, Inc., et al.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 2,449 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 04/02/2025  Signature: /s/ Keith A. Call

Name: Keith A. Call

Save for Filing